1                    **UNITED STATES DISTRICT COURT**
                     **WESTERN DISTRICT OF NEW YORK**
2

3   JOHN DOE,                        )
                                     ) Case No. 6:21-CV-06761
4                                    )            (FPG)(MWP)
                    Plaintiff,       )
5                                    )
    vs.                              ) May 3rd, 2022
6                                    )
    ROCHESTER INSTITUTE OF           )
7   TECHNOLOGY,                      )
                                     )
8                   Defendant.       )

9

10          **TRANSCRIPT OF TELEPHONIC ORAL ARGUMENT**
             **BEFORE THE HONORABLE MARIAN W. PAYSON**
                **UNITED STATES MAGISTRATE JUDGE**
11

12

    <u>APPEARANCES</u>:
13

    For the Plaintiff:   Nesenoff & Miltenberg, LLP
14                        By:  PHILIP A. BYLER, ESQ.
                          363 Seventh Avenue, 5th Floor
15                        New York, NY 10001

16  For the Defendant:   Bond, Schoeneck & King, PLLC
                         By:  STEPHANIE FEDORKA, ESQ.
17                            JENNIFER M. SCHWARTZOTT, ESQ.
                         350 Linden Oaks, Third Floor
18                       Rochester, NY 14625

19  Audio Recorder:      CATHY MARR

20  Transcriber:         MEGAN E. PELKA, RPR
                         Robert H. Jackson US Courthouse
21                       2 Niagara Square
                         Buffalo, NY 14202
22                       (716) 364-6449

23          Proceedings recorded with electronic sound recording,
    transcript prepared with computer-aided transcription.
24

25

1          THE CLERK:  Doe v. RIT, 21-CV-6761.

2          THE COURT:  Okay.  Counsel note their appearances for

3    the record, please.

4          MR. BYLER:  Yes, Your Honor.  My name is Philip Byler

5    from Nesenoff and Miltenberg representing the plaintiff, John

6    Doe.

7          THE COURT:  Okay.  Good afternoon, Mr. Byler.

8          MR. BYLER:  Thank you.  Good afternoon.

9          MS. SCHWARTZOTT:  Good afternoon, Your Honor.

10   Jennifer Schwartzott of Bond, Schoeneck, and King on behalf of

11   the defendant, Rochester Institute of Technology.  Your Honor,

12   I do want to say I also have one of our associates, Stephanie

13   Fedorka, in my office with me.

14         THE COURT:  Okay.  Thank you.  Good afternoon,

15   counsel.  And Mr. Rooney, my law clerk, Michael Rooney, is

16   also on the line.  Okay.

17     I have reviewed the motion that is pending before the

18   Court to permit the plaintiff to proceed by pseudonym.  RIT

19   had -- does not oppose the motion to proceed under a

20   pseudonym.  Ms. Schwartzott, you didn't put in any papers,

21   just a letter indicating there was no opposition, correct?

22         MS. SCHWARTZOTT:  That's correct, Your Honor.

23         THE COURT:  Okay.  All right.  Mr. Byler, thank you

24   for your motion papers.  A couple of observations that I want

25   to make, and one question I want to ask you.  It seems to me

1  that the applicable law, Second Circuit controlling authority,

2  is set forth in a decision *Sealed Plaintiff v. Sealed*

3  *Defendant Number 1*, 537 F.3d 185, 190 (2d Cir. 2008).  Are you

4  familiar with the test set forth in that decision?

5          MR. BYLER:  Well, I am.  And I actually, quite

6  frankly, you know, I'm very conversant in this issue.  I've

7  been briefing it.  One, *Doe v. Purdue,* at the district court

8  level 2017.  And I guess I'd like to start out by saying that

9  these cases in this particular area need to be viewed

10  separately because the cases are coming out of a confidential

11  university disciplinary process.

12     And what pseudonym treatment does is to preserve the

13  *status quo* ante of anonymity that, quite frankly, not only the

14  plaintiffs want to preserve, but also universities.  I mean, I

15  have a long list of cases recognizing pseudonym treatment

16  where it's just unquestioned.

17     There are three specific decisions where it was discussed

18  at length.  *Doe v. Purdue* happened to rely on Second Circuit

19  case law, I think more recent than *Sealed,* but the point is,

20  there's certain factors that are recognized specifically in

21  this area as to why you have pseudonym treatment.

22     And I'm sorry for taking the floor as long as I just did,

23  but if you have reservations about this issue, I'll brief it

24  for you.  I just feel very strongly that this is something

25  that should be respected.  I deal with universities all the

1  time, and most of them are adamant about having pseudonym

2  treatment.  So, position of the defendant in this case was not

3  unexpected because there is a Jane Roe to protect.

4          THE COURT:  Okay.  Mr. Byler, if I can just --

5          MS. BYLER:  I'm sorry I took over.

6          THE COURT:  My question was really more specific than

7  that.  I didn't see in your brief that you had cited the

8  *Sealed Plaintiff* Second Circuit decision.  And I thought,

9  perhaps, you were citing cases that relied on a Third Circuit

10  test.  And the Second Circuit decision in *Sealed Plaintiff*

11  sets forth a non-inclusive list of ten considerations to be

12  weighed and I just wanted to assure that you were familiar

13  with that decision.

14      And just to, you know, get your view as to -- seems to me

15  that those are considerations, that the Second Circuit has

16  certainly suggested, should be weighed.  And I think that you

17  would argue that certain of those factors deserve more weight

18  than others, and that this -- I really view this as the

19  authority -- stands for the proposition that each of these

20  cases is fact-specific and a determination needs to be made in

21  each individual case as to whether pseudonym treatment should

22  be granted.

23      So there's not -- you know, there's not a rule that says

24  in cases that involve allegations of, you know, non-

25  consensual sexual conduct on a college campus that, you know,

1   all those cases should be -- that the parties and the

2   witnesses should be afforded the opportunity to proceed by

3   pseudonym.  I'm not sure there is, you know, a recognized

4   presumption, although I will say that there certainly are, you

5   know, a good number of cases that have granted the plaintiff

6   the opportunity to proceed by pseudonym.  There's some cases

7   that go the other way.

8       It seems to me that if you look at authority dealing with

9   challenges to the disciplinary procedures, challenges by

10  somebody who was disciplined as a result of sexual conduct on

11  a college campus, it seems to me that, you know, more cases

12  do -- more courts have granted pseudonym treatment although,

13  again, it's not uniform.  So --

14          MR. BYLER:  Your Honor, I want to -- if you're

15  concerned about application of Second Circuit law, *Doe v.*

16  *Purdue* was briefed on the theory of applying the Second

17  Circuit test.  That's 321 F.3d 339.  Even though it was the

18  Northern District of Indiana, I felt it was the best way of

19  getting at the issue.

20      So, you know, *Doe v. Purdue* is a case which does apply

21  Second Circuit factors and finds pseudonym treatment.  And in

22  terms of the number of cases, the count that I have been given

23  is it's at least over 80, maybe 90, percent of these cases go

24  pseudonym.

25      It's not, you know -- where there are -- where there is

1    not pseudonym treatment, there are specific facts in the cases

2    such that there was already publicity, you know, about who the

3    plaintiff was.

4        Bill Nungesser's case at Columbia was one such example,

5    because his name was all over The New York Times and so on.

6    You couldn't preserve pseudonym treatment there.  Columbia

7    failed to uphold the confidential treatment that was supposed

8    to be held up in the disciplinary process.  So, you have some

9    cases where they don't, but there's specific reasons why.

10       The general reason, the general experience with these

11   cases is, the courts are looking at such things as, there's

12   information of intimacy, and a very important factor, injury

13   to the plaintiff from revealing his identity while he's

14   seeking vindication because, again, this is coming out of --

15   there's a process.

16           THE COURT:  Let me interrupt you.  I think, because I

17   asked you a question at the beginning, perhaps you have the

18   impression that, you know, I have a view that is contrary to

19   the position that you've taken.  You know, I don't think

20   there's a basis necessarily to conclude that.  I'm just asking

21   a couple questions.  So, I don't need to hear a recitation

22   here of your argument.

23       I understand what your argument is.  I think you've got

24   some compelling arguments as to why you are making the motion

25   that you are, but I did want to ask you about that, about the

1    consideration that you just mentioned, because I do think it

2    is an important one and it is one that some courts have, I

3    think, placed some significant reliance on if they have denied

4    a motion to proceed with -- in a pseudonym fashion, with a

5    pseudonym, and that is the extent to which the plaintiff has

6    kept, in this case, his identity private.

7        So, I think that's the one consideration that your papers

8    touch on, but as to which I feel like I don't have as much

9    information as I could.  I think you're telling me that

10   there's been no publicity about this.  It has not been

11   reported in the press, the campus press, or any other press;

12   is that correct?

13           MR. BYLER:  As far as I know.  I mean, I'm going on

14   the information that's provided me when I drafted the

15   complaint and that never came up.  And, as far as I know,

16   with, you know -- it just didn't occur it me to think it would

17   come up.  I know there are cases, because I've had them, where

18   there is, you know, publicity in the press or in the college

19   press and that creates issues, but that did not seem to be

20   here at all.

21           THE COURT:  Well, let me ask you, you know, I

22   assumed -- and it sounds like, perhaps, incorrectly -- that

23   that's something you would have discussed with your client.

24   Did you talk to your client about whether your client --

25           MR. BYLER:  I did discuss with the client --

1          THE COURT:  Go ahead.

2          MR. BYLER:  I did discuss with the client -- I'm

3    sorry.  May I add that I'm a little, you know, passionate

4    about the issue because I'm in an argument with a prominent

5    law professor on this whole issue.  And, you know, we have a

6    relationship.  So, I'm apologizing because it's spilling over

7    in our conversation.  I don't mean that.

8          Yes.  I did discuss, because I always do discuss, what

9    happened, you know, when this case was brought, because it was

10   eight months after supposedly the event, and there was

11   nothing, you know, in that eight-month period.

12         So, you had a disciplinary case with decisions in the

13   summer.  And so, you know, it did come up that there was any

14   press, but there wouldn't normally have been any press on the

15   college because it was -- given the chronological sequence of

16   events and what had happened, because this was a case where

17   the case got retried and you got a worse result than the first

18   time.  And this wasn't one of those cases where, you know --

19   and I've had them, where, you know, there's some pressure

20   being applied within the campus to go after somebody.

21         I had such a case at Columbia.  None of that happened

22   here, you know?  You had a disciplinary case that was, you

23   know, determined in the middle of the summer.  And so, you

24   didn't have a college press looking at it and, certainly,

25   there was no local press.  And this is a question I do raise

1  normally, I just don't often remember, but I just know from

2  the sequence of events, that was not something that

3  happened --

4           THE COURT:  Mr. Byler --

5           MR. BYLER:  -- and absent -- go ahead.

6           THE COURT:  Ms. Schwartzott, let me ask you, can you

7  answer that question from RIT's perspective?  Do you know if

8  there was any publicity as to this, you know, incident or the

9  disciplinary proceeding surrounding the incident or the actual

10  discipline that was imposed on the plaintiff?

11          MS. SCHWARTZOTT:  Your Honor, it's my understanding

12  there was no such publicity, and that it's best RIT knows this

13  information did not get out beyond, you know, beyond the

14  parties involved.  But they're not aware of any press, any

15  social media discussions about it, you know, forums on campus.

16  RIT is not aware of any of that.

17          THE COURT:  Okay.  Mr. Byler, what can you tell me

18  about, if you know, about the degree to which the plaintiff

19  may have disclosed the incident that was at the heart of the

20  discipline and the discipline to, you know, people beyond his

21  close family members?

22          MR. BYLER:  I think he is unhappy about the

23  situation.  No.  He wasn't going around talking about it.  He,

24  you know, talked primarily with his father, with Mary Beth

25  Steiner, who is our Title IX consultant of my firm, and me, in

1  order to address the situation.

2      THE COURT:  Are you speaking on your own personal

3  knowledge or are you speaking on your assumption that that's

4  the case?

5      MR. BYLER:  It's the best knowledge I've got.  He has

6  been cut off, because of the discipline, from other contacts

7  within the school.  He's not gone around and talked about it

8  other than to, you know, tell his baseball coach he's got an

9  issue, but did not go into the details.  So that's what he

10  told me.  And then that is consistent with how John Doe has

11  proceeded.

12      THE COURT:  Ms. Schwartzott, do you have any

13  information that would suggest that what counsel has

14  represented is not accurate from your understanding?

15      MS. SCHWARTZOTT:  I don't, Your Honor.  I would,

16  however, just add, so -- two additional to people.  There were

17  other students, right?  So his -- John Doe's girlfriend --

18      THE COURT:  Right.

19      MS. SCHWARTZOTT:  -- was brought into this as well as

20  a student witness.  So, those two individuals were familiar

21  with and provided -- the student witness provided statements

22  that was contemplated during the disciplinary proceeding.  To

23  what extent those individuals told others, I don't know.

24  We're not aware --

25      THE COURT:  Okay.

1          MS. SCHWARTZOTT:  -- that it was kind of something

2     that was passed along, but those would be the additional

3     people that Mr. Byler didn't mention.

4          THE COURT:  Okay.

5          MR. BYLER:  By the way, can I mention one case, the

6     *Doe v. Colgate* case?  On that --

7          THE COURT:  Yeah, I don't need --

8          MR. BYLER:  I was just going to say there was a news

9     story concerning the defendant in that case, but not

10    identifying specifically the plaintiff, and the Court said

11    that's not enough to dispense with pseudonym treatment.  So I

12    just threw that in to indicate that maybe someone talked to

13    somebody, that's not going to get you the level which undoes

14    the justification for pseudonym treatment.  And again, I

15    apologize for being so verbose.  I'm sorry.

16         THE COURT:  Mr. Byler, I'm not sure that I, you know,

17    disagree with you, although I do think that, under the case

18    law that I find applies to this, that the extent to which the

19    plaintiff had kept the information confidential or, by

20    contrast, or has disclosed it, disseminated it more broadly,

21    is a consideration to weigh.  It may not be a consideration

22    that trumps all others, but it is a fair consideration.

23       So, I think the -- you know, I think it's appropriate to

24    ask about that information and to expect that that information

25    will be -- you know, will be provided to the Court.

1        I will accept your representation because I understand

2    that you are representing, not that you just assumed that he

3    cared about keeping it confidential, so he did.

4        I am understanding that you are representing that you had

5    a conversation with him and that you are satisfied, based on

6    that conversation and your representing to the Court, that he

7    discussed it with his family members, that there were

8    witnesses who were involved in the disciplinary proceeding,

9    and that he told his baseball coach that he had an incident,

10   but didn't go into the details, and I'm accepting your

11   representation that, you know, he did not discuss this, you

12   know, more broadly than that.

13           MR. BYLER:  That is my representation.

14           THE COURT:  All right.  I'm going to make my ruling

15   from the bench.  I agree with Mr. Byler that I think the

16   weight of authority in cases like this does support

17   plaintiff's application to proceed by pseudonym.  And, in that

18   respect, I'm relying on *Doe v. Louisiana State University*,

19   2020 Westlaw 6493768 at page 2, Middle District of Louisiana

20   2020.

21       Quote, the Court recognizes that this particular type of

22   case in which a male student sues a university that found him

23   guilty of committing sexual assault after an allegedly broad

24   and deficient disciplinary proceeding is a target for

25   increased media attention.

1     In these types of cases, courts repeatedly have allowed

2   plaintiffs to proceed under a pseudonym according to cases *Doe*

3   *v. Purdue University,* 321 F.3d 339 at 342 (N.D.I.N. 2017)

4   noting in a case where the complaint set out intimate details

5   regarding plaintiff and Jane Roe's sexual relationship, Jane

6   Roe's allegations of sexual misconduct, and the details of the

7   university's findings that, quote, other courts have permitted

8   plaintiffs alleging similar claims against colleges and

9   universities to proceed anonymously.

10     Collecting cases *Doe v. Colgate University,* 2016 Westlaw

11   1448829 at 34, (N.D.N.Y. 2016).  Quote, while the Court is

12   mindful of the high burden a plaintiff must meet to show that

13   anonymity is warranted, the Court takes note that courts

14   across the country have allowed plaintiffs alleging similar

15   crimes against colleges and universities stemming from

16   investigations of sexual assault to proceed anonymously.

17     The Court finds that, particularly in the context of

18   investigating allegations of sexual assault on college

19   campuses, it is imperative that the rights of all parties

20   involved be thoroughly protected in order to properly

21   adjudicate these claims, collecting cases.  Still, each

22   situation is different and, quote, must be evaluated on a

23   case-by-case basis, and the factors set forth by the Second

24   Circuit in *Sealed Plaintiff* offer necessary guidance for

25   courts grappling, end quote, with a party's request to proceed

1   under a pseudonym. *Doe v. Colgate University* at page 2.  I

2   have considered the factors that are set forth in the *Doe* and

3   the *Sealed Plaintiff* case, the Second Circuit *Sealed Plaintiff*

4   case, some of those considerations, I think, are weightier

5   than others than a case like this.

6       The first factor, let me just get the list out here,

7   whether the litigation involved matters that are highly

8   sensitive and of a personal nature.  I think that that factor

9   unquestionably weighs in favor of plaintiff as to all the

10  challenges to the disciplinary procedures.

11      The incident that gives rise to the challenge to the

12  disciplinary procedures involved sexual conduct between a

13  plaintiff and Jane Roe and the incident is plainly sensitive,

14  personal in nature and the revelation of plaintiff and Jane

15  Roe's names would result or certainly their -- it's not

16  speculative to say -- would result in embarrassment, if not

17  humiliation, and, if not, emotional distress to both the

18  plaintiff and to Jane Roe.

19      Factors two and three in my estimation can be considered

20  together.  I think they also weigh in favor of the plaintiff,

21  whether identification poses a risk of retaliatory, physical,

22  or mental harm to the parties seeking to proceed anonymously,

23  or, even more critically, to an innocent non-party; three,

24  whether identification presents other harm and the likely

25  severity of those harms including whether the injury litigated

1   against would be incurred as a result of the disclosing of the

2   plaintiff's identity.  If disclosure creates risk of harm,

3   disclosure is disfavored, but the risks must be more than

4   speculative claims of physical and mental harm.  These

5   factors, in my estimation, weigh in favor of the plaintiff.

6        And as proceeding as a -- with a pseudonym certainly,

7   there is a risk of emotional distress both to the plaintiff

8   who claims that he was unfairly determined to have committed

9   sexual assault that was non-consensual through a flawed

10  process, and also risks emotional distress to the Jane Roe who

11  claims that she was a victim of a non-consensual sexual

12  assault committed by the plaintiff.

13       *In Doe v. Trustees of Dartmouth College,* the court stated

14  at page 6, even most salient to the Court when assessing bases

15  upon which disclosure is feared or sought to be avoided is the

16  victim's interest in anonymity.  Should the plaintiff be

17  publically identified, the alleged victim would likely be

18  identified as well.  And.  In that case, the court found that

19  the alleged victim has a stronger case for anonymity, unlike a

20  litigant who is using the courts, must be prepared to accept

21  public scrutiny that is an inherent part of public trials.

22  The alleged victim is a non-party.

23       So, I consider both the interest of both the plaintiff and

24  I think we're calling her Jane Roe but the alleged victim in

25  this case as well.

1    Here, the plaintiff alleges that, regardless of whether he

2    prevails in this action, revelation of his name would hinder

3    his future academic career prospects resulting in further

4    mental, emotional, and psychological harm because his name

5    would be discoverable by a simple internet search, and public

6    identification could defeat the very purpose of the

7    litigation.

8    I agree that that is a legitimate interest and one which

9    favors disclosure -- favors proceeding by a pseudonym, while

10   the allegations of potential harm are not supported by any

11   expert opinion.  I think the concern of harm is sufficiently

12   real and concrete to deserve weight; particularly in this age

13   where -- and I think plaintiff papers note this, but certainly

14   other cases have -- in the internet age, where once something

15   is made public, that disclosure may be out there for a very

16   long time associated with the plaintiff's name.

17   *Doe v. Trustees of Dartmouth College.*  The court, in that

18   case, recognized that at pages 5 to 6, 2018 Westlaw 2048385,

19   quote, more significant in this case, plaintiff's argument

20   that public disclosure will subject him to reputational damage

21   and will impair any future educational and career prospects at

22   Dartmouth, regardless of the actual outcome of this action.

23   Such concern is only exacerbated in the internet age which can

24   provide additional channels for harassment and will connect

25   plaintiff's name to Dartmouth's findings and sanction forever,

1   whether or not he is successful in this litigation.  So, I

2   find that the first three factors in *Sealed Plaintiff* weigh in

3   favor of the plaintiff.

4        The next factor, whether the plaintiff is particularly

5   vulnerable to the possible harm and disclosure, particularly

6   in light of his age, that is a factor, in my estimation, that

7   does not weigh in favor of the plaintiff.  He's an adult.  He

8   was an adult at the time this happened, and I'm not aware of

9   any particular vulnerability.

10       Whether the suit is challenging the actions of the

11  government or that of a private party.  This involves the

12  action of a private party.  I think, technically, that

13  consideration to the extent that it deserves consideration

14  weighs against the plaintiff, but I don't find that to be a

15  very strong consideration.

16       Whether the defendant is prejudiced by allowing the

17  plaintiff to press his claim anonymously, whether any

18  prejudice can be mitigated by the district court.  There's no

19  issue of prejudice here.  RIT has made clear, the plaintiff

20  has made clear that RIT is aware of the plaintiff's true

21  identity.  There's no question about that.  So, there's no

22  prejudice that can be shown by RIT, and RIT has not argued to

23  the contrary.  That factor weighs in favor of the plaintiff.

24       Whether the plaintiff's identity has, thus far, been kept

25  confidential.  I do think that that is a consideration that

1   deserves weight and deserves more weight than some of the

2   other considerations or, in balance, I find that that

3   consideration weighs in favor of the application pending

4   before the Court, the record before the Court, and based upon

5   the representations made by the plaintiff's counsel supports

6   the inference that plaintiff has not disclosed this incident

7   or the discipline in any significant manner, but rather has

8   disclosed it to, quote, family members, people who know about

9   it, have learned about it through -- in the disciplinary

10  process itself.

11       And there's nothing in the record to suggest that the

12  plaintiff has posted anything on social media about it, had

13  made any statements to the press, has broadly disseminated it

14  to large, you know, groups of students or classmates.

15       Whether the public's interest in the litigation is

16  furthered by requiring the plaintiff to disclose his identity.

17  I find that consideration is, frankly, a neutral

18  consideration.  I don't think that weighs one way or the other

19  here.

20       Whether, because of the purely legal nature of the issues

21  presented, there is an atypically weak public interest in

22  knowing the litigants' identity.  This is not a legal issue.

23  This a factual issue, although I recognize that, you know, at

24  the core, there are some legal questions here with respect to

25  the disciplinary procedures that were utilized, but is it --

1   that factor weighs against the plaintiff, although it is not a

2   particularly significant consideration.

3       Are there other alternative means for protecting the

4   confidentiality of the plaintiff?  I don't think there are any

5   realistic mechanisms besides granting pseudonym treatment that

6   would be adequate to protect the confidentiality of the

7   plaintiff.

8       So, weighing those considerations, considering the case

9   law that I have that relates to claims such as the claims made

10  here, I grant the plaintiff's motion to proceed by pseudonym,

11  which is unopposed by RIT, and I will issue an order to that

12  effect later today.  Okay.  Anything else?

13          MR. BYLER:  Thank you, Your Honor.  Well, no.  Thank

14  you, Your Honor.  I just want to say that was an excellent,

15  excellent discussion, and I apologize because you're on top of

16  this in a way that I didn't know and I wouldn't have talked as

17  much if I had known, so please accept my sincere feelings.

18  That was a well-done discussion.

19          THE COURT:  Ms. Schwartzott, anything you need to

20  add?

21          MS. SCHWARTZOTT:  No, Your Honor.

22          THE COURT:  Okay.  I think we've got a scheduling

23  order in place.  Do we, or do I need to --

24          MS. SCHWARTZOTT:  We submitted a proposed plan, Your

25  Honor and -- but we're open to, you know, we laid out --

1  Mr. Byler and I conferred by email because of our various

2  schedules but we were amenable to the dates that we submitted.

3          THE COURT:  Okay.  I want to find the findings.  Did

4  you give that to me?  I apologize.  I just don't have it at my

5  fingertips.

6          MS. SCHWARTZOTT:  Your Honor, we filed it this

7  morning, and then I confirmed with your clerk, Kim, and she

8  indicated that she did see it, but I can shoot it over again

9  if it's helpful.

10         THE COURT:  Okay.  So you did it this morning?  I

11 have a docket sheet that I printed yesterday, so I guess

12 that's --

13         MS. SCHWARTZOTT:  Oh, okay.

14         THE COURT:  Let me pull it up on the docket sheet.

15 Just bear with me for a minute.

16         MS. SCHWARTZOTT:  Sure.  And I apologize for that

17 inconvenience, Your Honor.  We had -- my assistant was out

18 yesterday, and I was working remote, so we just didn't get it

19 filed until this morning.  I apologize.

20         THE COURT:  Printing it out.  Okay.  So, I'm going to

21 require that the parties engage in the mediation process,

22 which is part of our court-ordered process.  So, did you talk

23 about when you might be able to agree on a mediator?  I don't

24 see that in here.

25         MS. SCHWARTZOTT:  No, Your Honor.

1          MR. BYLER:  Go ahead, Jennifer, I'm sorry.

2          MS. SCHWARTZOTT:  We did not do that yet, Your Honor.

3   We did just put a deadline of when we make that request, but

4   we certainly, if you are open to -- if you want to --

5          THE COURT:  Paragraph 1 of the scheduling order will

6   have the mediation deadlines that come out -- that are

7   automatically generated by our plan.  I suspect that it will

8   give you a deadline of some time probably end of May, early

9   June, for designating a mediator acceptable to both sides.

10     If one is not designated, then the Court will appoint

11  somebody for you, and I think you'll probably have until some

12  time around the end of July or middle of August to conduct a

13  mediation, but that's kind of going by memory of how long

14  those periods are.  But that will be at paragraph 1 of the

15  Court's scheduling order.

16     By report on deposition hours, what do you mean by that?

17          MS. SCHWARTZOTT:  So, it's my understanding we have

18  to give an approximation per party of how many hours we need.

19          THE COURT:  Well, I mean, I would say to the extent

20  that you are proposing depositions that will exceed the limits

21  within the federal rules, then you'd have to get permission of

22  the Court.  So I'm going to assume there's not a problem there

23  unless you come back to me and let me know there is.

24     Amendment of the pleadings.  May 30th.  Does either side

25  expect to ask to amend the pleadings?

1          MR. BYLER:  I don't.  This is Mr. Byler.  I don't.

2          MS. SCHWARTZOTT:  Your Honor, I don't anticipate that

3     as well.

4          THE COURT:  Okay.  Mandatory disclosures.  You set

5     that out in a, sort of, chronological fashion with all of the

6     disclosures being made by August 29th, including supplemental

7     disclosures.  That's fine.  Discovery to be completed by

8     Halloween.  That's okay.  Let's see.  Oh, and then you've got

9     request for admissions after that.  So, is that to say that

10    you would like to, essentially, have an understanding between

11    yourselves that requests for admission will not be considered

12    discovery within the factual discovery deadline?

13         MS. SCHWARTZOTT:  Yes.  I guess, Your Honor, the

14    thinking on that was, once we have, you know, the body, the

15    universe, if there are requests that can be made that can

16    alleviate issues for trial and come to an agreement on things

17    that we would have that opportunity by that deadline.

18         MR. BYLER:  Yeah.  Also, I mean -- also, you know,

19    the request for admission would, you know, come up in terms of

20    any pretrial dispositive motions, but that's farther out.  But

21    putting it where it is, you have an ample opportunity to, you

22    know, deal with the discovery record so you can do requests

23    for admission.  Nothing is more frustrating when people rush

24    out with a request for admission and there's really nothing in

25    the discovery to support it, to make it clear, to make it

1  specific.

2          THE COURT:  That's fine.  I think generally if one

3  sets a fact discovery deadline, one would expect that that

4  would include requests for admission.  So I just wanted to

5  make sure I understood that you're essentially proposing that

6  all other discovery, factual discovery, be completed by the

7  end of October with the exception of requests for admission

8  and that deadline for that would be November 14th.  That's

9  okay.

10     Expert witnesses, that is, expert witnesses on behalf of

11  both sides, to be identified in and reports prepared by

12  December 5th.  Is that the proposal?

13          MS. SCHWARTZOTT:  Yes, Your Honor.

14          MR. BYLER:  Yes, Your Honor.

15          THE COURT:  Okay.  And then, summary judgement

16  motions, February 1?

17          MR. BYLER:  Yes, Your Honor.

18          MS. SCHWARTZOTT:  Yes.

19          THE COURT:  Okay.  That sounds fine.  I'm going to

20  build in a further status conference.  So what -- we'll do

21  that probably some time in late October.  Do you want me to

22  give you a date now or do you want me just to build it into

23  the schedule?

24          MS. SCHWARTZOTT:  Yes, Your Honor.  I have a trial

25  that starts the end of September that might carry into that

```
 1   first week of October, the third week of October --

 2            THE COURT:  How about October 25th at 10?

 3            MS. SCHWARTZOTT:  That would be perfect.  That's fine

 4   with defendant.

 5            THE COURT:  Okay.

 6            MR. BYLER:  October 25th is good with plaintiff.  I'm

 7   sorry.

 8            THE COURT:  Okay.  I'll build that in.

 9       The last thing I want to say is, if you have any discovery

10   disputes, and you'd like to try to resolve them informally,

11   I'm happy to do that, but I require two things; number one,

12   that you -- and you can email me a letter, but when you ask

13   for a conference to address discovery disputes, I want you to

14   lay out the dispute with enough specificity so that I can

15   understand it and be prepared to be helpful at the conference.

16       So, don't just tell me that you have 25 disputes and you'd

17   like the Court's assistance.  Tell me, you know, we'd like to

18   address the following issue.  This is, you know, the

19   plaintiff's view.  This is the defendant's view.  And the

20   other thing the letter needs to tell me is that you tried to

21   resolve the dispute with one another before bringing it to me,

22   even if you bring it to me informally.  So, I don't require

23   that.  Some judges require a pre-motion conference.  I'm not

24   one of those judges.

25       If you want to file a formal motion, you're free to do
```

1    that.  If you want to try to resolve it informally, I'm happy

2    to have a telephone conference with you to address that.  In

3    either event, make sure you confer before bringing it to the

4    Court for resolution, okay?

5            MS. SCHWARTZOTT:  Yes, Your Honor.  Thank you.

6            MR. BYLER:  Yes, Your Honor.

7            THE COURT:  Okay.  That's all I have.  So, I'll take

8    this scheduling plan and convert it into a scheduling order.

9    It will be probably get docketed tomorrow.  Okay?

10           MS. SCHWARTZOTT:  Thank you very much.

11           MR. BYLER:  Yes, Your Honor.  Thank you very much,

12   Your Honor.

13           THE COURT:  Okay.  Anything else?

14           MS. SCHWARTZOTT:  I don't believe so.

15           THE COURT:  Okay.

16           MR. BYLER:  No.

17           THE COURT:  Thank you very much.  Have a nice day.

18   Take care.

19           MR. BYLER:  Thank you very much, Your Honor.  You,

20   too.  Bye, bye.

21           MS. SCHWARTZOTT:  Bye, bye.

22   (Proceedings concluded.)

23

24

25

 1                    <u>CERTIFICATE OF TRANSCRIBER</u>

 2

 3          In accordance with 28, U.S.C., 753(b), I certify that

 4   this is a true and correct record of the proceedings held in

 5   the United States District Court for the Western District of

 6   New York before Honorable Magistrate Judge Marian W. Payson on

 7   May 3rd, 2022.

 8

 9

10                              <u>s/ Megan E. Pelka, RPR</u>

11                              Megan E. Pelka, RPR

12                              Transcriber

13

14

15

16

17

18

19

20

21

22

23

24

25