UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN DOE,

            Plaintiff,

                     Case # 21-CV-6761-FPG

v.

                     DECISION AND ORDER

ROCHESTER INSTITUTE OF TECHNOLOGY,

            Defendant.

   Plaintiff John Doe[1] moves for reconsideration of the Court's March 11, 2024 Decision & Order. ECF No. 46. He alleges that the Court erroneously dismissed his Title IX claims. ECF No. 46-1 at 6. For the reasons discussed below, the Court disagrees.

   "The Federal Rules of Civil Procedure do not recognize a motion for reconsideration." *Montague v. City of Rochester*, No. 20-CV-715, 2021 WL 2042675, at *1 (W.D.N.Y. May 14, 2021) (internal quotation marks omitted). Nevertheless, courts are willing to entertain such motions under, for example, Rule 54(b), Rule 59(e), or Rule 60(b), depending on the circumstances presented. *See id.* Whatever vehicle for the motion, the standard for granting it "is strict." *Id.* "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. Such a motion is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise

---

[1] For purposes of the motion for reconsideration, the Court will continue to permit pseudonymity in this matter. However, as previously stated, a "different balance of interests comes into play at the trial phase." *Lawson v. Rubin*, No. 17-CV-6404, 2019 WL 5291205, at *2 (E.D.N.Y. Oct. 18, 2019) (internal ellipsis omitted); *see also* ECF No. 45 at 1 n.1.

taking a second bite at the apple." *Stegemann v. Rensselaer Cnty. Sheriff's Office*, No. 15-CV-21, 2017 WL 4350518, at *1 (N.D.N.Y. July 6, 2017) (internal quotation marks, citation, and brackets omitted).

First, Plaintiff identifies certain facts (and inferences from facts) that he believes should have been included in the "Background" section of the decision. *See* ECF No. 46-1 at 8-11. Those facts were known to the Court at the time it issued its decision and, thus, they do not alter the Court's reasoning or conclusions.

Second, Plaintiff contends that the Court misapprehended Second Circuit precedent on Title IX. *See id.* at 11-14. To the contrary, the Court correctly described the relevant law: the Second Circuit has been willing to find an inference of gender bias where "there is a combination of (1) procedural irregularities that show a biased process, and (2) surrounding circumstances that suggest that 'this bias was likely a sex-based bias.'" ECF No. 45 at 19 (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 31 (2d Cir. 2019)). The Second Circuit has rejected the proposition that irregular disciplinary proceedings "automatically permit a factfinder to reasonably infer that a university has committed sex discrimination," ECF No. 45 at 20 (quoting *Roe v. St. John's Univ.*, 91 F.4th 643, 654 (2d Cir. 2024)), at least where the irregularities are not wholly "inexplicable." *Id.* at 21 n.7 (quoting *St. John's*, 91 F.4th at 655-56). This was the rubric that the Court applied in assessing the viability of Plaintiff's Title IX claims. *See id.* at 22-24.

Second, Plaintiff argues that he provided sufficient evidence to permit an inference of sex bias. *See* ECF No. 46-1 at 14-23. He cites, among other things, the facts that he was called an "ass" at the second hearing and that Smith-Schubert accused him of relying on "tropes,"[2] *id.* at 15-

---

[2] In its prior decision, the Court agreed that a reasonable factfinder could find that these comments "disclose[d] RIT officials' bias, unprofessionalism, and 'result-driven' predisposition." ECF No. 45 at 14. But it did not conclude that such comments reflected *sex* bias. *Id.* at 22. Although Plaintiff disagrees, he marshals no legal authority to support his otherwise conclusory assertion that such language is gendered. *See* ECF No. 46-1 at 15-17; *cf. Galloway v. Gen.*

2

17; the different outcomes and different treatment he received in the first and second hearings, *id.* at 17-19, 21; the misapplication of the preponderance-of-the-evidence standard, *id.* at 19-20; and the severity of his punishment, *id.* at 21-23.  At bottom, Plaintiff takes the view that the errors, hostility, bias, and other unprofessionalism exhibited by RIT officials points to gender bias, especially given the context that he was a "male respondent in a university disciplinary proceeding for alleged sexual misconduct."  *Id.* at 16; *see also, e.g.*, *id.* at 19 (asserting that adjudicative irregularities may "point[] to gender bias"); ECF No. 51 at 13.

The Court remains unconvinced.  "[P]rocedural errors" in a Title IX proceeding are not "inevitably a sign of sex bias," *St. John's*, 91 F.4th at 654, but may be the result of "ineptitude, inexperience, and sex-neutral pro-complainant bias." *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 334 (1st Cir. 2022).  While a reasonable factfinder could find Plaintiff's proceedings highly irregular, and could conclude that RIT officials exhibited "bias [and/or] unprofessionalism," ECF No. 45 at 14, the "fatal gap" in Plaintiff's theory is the lack of evidence demonstrating a "causal connection" between those facts and "gender bias."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  None of the facts cited or arguments made in Plaintiff's motion casts doubt on the Court's conclusion.

Accordingly, Plaintiff's motion for reconsideration (ECF No. 46) is DENIED.  The status conference remains as scheduled.  *See* ECF No. 55.

IT IS SO ORDERED.

Dated:  August 22, 2024
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

*Motors Serv. Parts Ops.*, 78 F.3d 1164, 1167-68 (7th Cir. 1996) (for purposes of a Title VII sexual harassment claim, distinguishing terms like "loonie," "nut case," or "whacko"—which do not facially have any connection to "being a woman"—from terms like "dumb fucking broads" or "fucking cunts," which are "inherently terms of sexual harassment").

3